Well, the next case. Corina Fuentes from Federal Public Defender's Office. With the Court's permission, I'd like to reserve two minutes for rebuttal. Your Honor, this case is about what is required to establish the two-level enhancements under 3A1.1 for vulnerable victims. Mr. Adeolu submits that actual harm must be established prior to increasing a sentence based on a vulnerable victim enhancement. Where in the sentencing guideline for 3A1.1 does the word harm appear? It does not appear specifically in the actual provision, but if Your Honor looks at the commentary to the provision, it gives two specific examples of what constitutes an appropriate application of enhancement. The first one is a false cancer cure is sold to a cancer victim. That implies harm. The cancer sufferer would not be receiving appropriate treatment. So there's obviously a physical harm in that case. The second example they give is a handicapped individual is a victim of a robbery. Again, that implies there's an implication of a harm there. They have had either property taken from them and they may or may not have been hurt in the course of the robbery. I would also point out... You're asking us to infer that there's actual harm required there. Yes. The other point... Well, I think that those specific examples given in the commentary... How's the bank teller harmed? The bank teller, actually, they said that wasn't... It wasn't a vulnerable victim. Correct. Right. But in the two examples that they give that are appropriate for the application of the enhancement, I think harm is implied. I would also point out that in the commentary, it refers back to 1B1.3 regarding relevant conduct. And the definition of relevant conduct does talk about harm. It talks about harm caused by acts or omission. So while the provision of 3A1.1 doesn't specifically talk about harm, the commentary does imply that harm is required. The district court did make a finding that there was actual harm here. Correct. Tangible and intangible. Right. And I'm not sure where the language tangible and intangible come from. But I would submit that harm was not established and that actual harm was not established. The harm that was discussed at sentencing was really purely speculative. It was potential harm that the social security numbers that were used, the children that are... Those individuals, the children that were identified as the vulnerable victims in this case, they may incur these harms. So is it your position that identity theft causes no harm? Well, first I would submit, Your Honor, that identity theft wasn't established. This is not an identity theft case. Mr. Ayola was not charged with identity theft. Identity theft was not established in the course of the case or in sentencing. These social security numbers were misused for the purpose of attaining the client's higher credit or higher returns. But in cases where identity theft or the misuse of social security numbers has been used to justify application of the enhancement, there's been a lot more established. Credit cards were opened. Bank accounts were used. Passports were opened. There was actual... Would it be enough if there was... If the parents of the children whose social security numbers were stolen and birth dates were used were not purchased insurance for purposes of protecting in the future against the harm coming from their stolen identities? Well, the parents wouldn't qualify as vulnerable victims. I'm sorry, I didn't hear that. I'm sorry. The parents, Your Honor, would not be considered vulnerable victims. The only vulnerable victims identified in this case were the children whose numbers were misused. I think it's... Would the incurring of expense on behalf of the children satisfy actual harm and therefore come within the ambit of it? That's the point. I think it's the government established that the parents had to go out and purchase insurance because of this, and it was proven potentially that may qualify as actual harm, but that's not this case. So your point is it's all speculative, and as such, it can't really fall within the ambit of this? It's all speculative, and I think if you look at the record, even when questioning the IRS witness who came and testified, a lot of the questions were, assume this happens. If this happens, would it be harm? What would happen if this? But at no point did the government... The government provided a chart, a spreadsheet, but at no point did they say, you know, it was unable to, or child A, and I think they concede there was no monetary damage in this case. Now, you said that there is no identity theft charge, and we know we can consider relevant conduct, so let's put that aside for a second. The absence of a charge of that crime. We also know that these social security numbers were used. There's no suggestion they were used with anyone's permission. Indeed, there's evidence to suggest the names put on those tax returns were not associated with the taxpayer. You asked us to look outside of 3A by going to 1B1. To relevant conduct. To relevant conduct. If we were to go to 2B1.1 and we look at the definition of pecuniary harm, the application notes there say if someone's identity is used, that constitutes pecuniary harm. It doesn't say there has to be a resulting financial loss. So if we were to adopt your approach that we look at the guidelines as a whole, why doesn't that language alone allow us here to support the enhancement? I think there's a couple of cases, including the Kennedy case, which says 2B1.1 does not dictate how 3A1.1 is read. But you want us to go back to a different guideline provision to read 3A1.1. Well, of course, the cases all talk about relevant conduct. Kennedy does. I'm sorry. Kennedy does. Yes. And in Kennedy there was no harm. The court never says there was no harm. What the court does is distinguish between 2B1.1 and 3A1.1, but this court never actually says harm is not required. I think it goes through a loss analysis, and in that case I think there is a better argument that there was harm because money was stolen. It is eventually reimbursed by insurance companies. But the victim, vulnerable victim in that case, did not incur a loss. The loss was sustained by the insurance company. It was ultimately not a loss, but I would argue there was an actual theft there. At some point there was monetary damage that was eventually reimbursed. I think there is a better argument there that there was a harm. And, again, I think the overall holding in Kennedy was not that you don't have to establish harm. The argument there or the main issue there was if you're not a victim under the 2B1.1, which Your Honor just mentioned, can you still be a victim under 3A1.1? It distinguishes. The definition of victim is defined differently throughout the guidelines, and that was the issue there. When you look at vulnerable victim as it's defined under Kennedy and you apply the I and O factors, your position is these minors don't fall within the ambit of vulnerable victim? It's not that the minors aren't necessarily vulnerable. I think they're just not victims in the conventional sense of the word victim. Even if you just look at a common sense definition of victim, harm, even Black's Law Dictionary, it implies a person who is hurt by a tort, a crime, an action of another person. In this case, yes, I respectfully submit that the children, while they may fall under a conventional definition of vulnerable, are not victims because they did not suffer, or at least the government did not establish that they suffered an actual harm. So it has to be actual harm, not risk of harm. From your point of view, the test you think we should impose is actual concrete harm to these vulnerable victims, not risk of harm, not no harm. Yes, Your Honor, looking at the Seventh Circuit, looking at the Anderson case, which was a district court case. How do we reconcile that then with Kennedy? I submit that Kennedy did not hold, does not stand for the proposition that harm is not required. In fact, Kennedy refers back to the Satz case, which doesn't officially establish that harm is required, but they define victim as someone who is hurt by conduct or someone injured by relevant conduct. So Kennedy does refer back to that opinion, and that opinion in defining this court, in defining victim, does specifically say hurt or injury. But wasn't the Satz, that language you're talking about in Satz, really focused on whether you could consider relevant conduct as opposed to the offense of conviction? The issue was whether you could consider relevant conduct, but still in making that holding, this court does provide a definition of victim, and it doesn't just say harm once. It repeats the term harm and injury at various points. Another issue I'd like to bring up regarding the issue of harm is, I think if you don't have a harm requirement in this type of enhancement, which is a pretty broad enhancement right now, it becomes a very slippery slope. It becomes a very broad enhancement, almost a catchall enhancement, where any time, almost a status enhancement, any time say a minor or someone elderly or somebody with some type of physical ailment is, you know, involved in an offense, this could theoretically apply, and that becomes very dangerous, a very dangerous slippery slope type of enhancement because it becomes a catchall. And it can be very arbitrarily applied. For example, in this case, there was the appellant, and there was also a cooperating co-defendant. They conducted similar conduct. They were accused of similar conduct, and in the sentencing process, the cooperator is not hit with this enhancement. They decided not to apply this enhancement. That's not an unusual result, right? It's not unusual, but I think it highlights that this could be very, without, you know, a stronger definition of what a vulnerable victim is, without requiring harm in the way that several other circuits require it, it becomes a very potentially overly broad enhancement where it can just be applied. So we have to take out hypothetical from your standpoint. I believe hypothetical and speculative harm has to be removed, and there has to be some type of actual harm. And I think even – Suppose it was harm that, while not apparent and immediate, was something that would come in the future, like, you know, something that was somehow time-bound and wouldn't come to fruition for a six-month period of time, but it would come to fruition. I think if it's established that it would come to fruition, then there's a stronger argument there that there is a harm that is going to occur. Again, I submit that's not this case. It's not – it was not established that any of the individuals whose social security numbers were misused were absolutely going to occur any specific type of harm. That just wasn't established in this case. But do you concede that if the things that Agent O'Brien testified to occurred, that would constitute harm? That is, that they would not be able to file their returns electronically, a 17-year-old who turns 18 and files his return and would have to file a paper return and would have to satisfy that he was indeed not a dependent of the fraudulent tax filers? It is a bit of a stretch, I think, incurring a little bit of additional paperwork to say that that's an actual harm. But I think, again, more importantly, we don't know that these individuals are going to have to go through these extra steps of filing extra paperwork, because we don't – not necessarily everyone who turns 18 is necessarily going to file taxes in the next few years. There are many adults who don't file taxes. So if the fraud were a little different, let's say you involved a nurse at a hospital who had access to newborns and was able to follow them so that she could get social security numbers. I know that's a little attenuated, but assume it just for the moment. So there are one-year-olds whose social security numbers are now in the possession of someone in your client's position. And the government may – if we ruled as the government is suggesting, presumably in that case the government could make the same argument that in 16 or 17 or 18 years, when this person has to file, there will be this added burden. And I presume your argument would be, even though the time is much different, it would be obviously similarly speculative. So if we did apply it in their favor, it would just be ridiculous. Well, you wouldn't say ridiculous. I wouldn't say ridiculous. Again, I think it's a stretch. I think for the most part the guidelines are designed to punish conduct that occurred, not future activities that may or may never happen. And looking specifically at the facts of this case, the consequences rather in this case, Mr. Adeolu's sentence was essentially increased by one year. Two levels doesn't sound like a lot, but when you actually look at the guidelines, this individual's sentence, he's already being punished for the misuse of the social security numbers by being convicted of tax fraud. So that behavior is already subsumed in what he is being punished for. We're now tacking on an additional year, and it could be more if you go down the guidelines. So an additional year is added to this person's sentence based on possible future harms. But that's just based upon your position that there has to be harm. Correct, and that's why I'm saying that harm should be required because it's not a de minimis effect. You're talking about an additional year. We've never held that harm is a requirement. I'm sorry, your honor. We have never held that harm. Not specifically, no. Not specifically. What my argument is I encourage the court to adopt the position of the circuits that have. All right, thank you. Good morning, your honor. This is Zeratega on behalf of the government. I already work in the U.S. Attorney's Office of the Eastern District of Philadelphia. This court, as Judge VanAskey has pointed out, has never held that actual harm is a requirement before the district court imposes the vulnerable victim enhancement. Is there any circumstance here where the minors would suffer anything other than the hypothetical harm that has been suggested by the government? Well, the harm that was suffered here is that the victims who are vulnerable, as the district court found, had their social security numbers stolen. The appellant likes to use the word misused, but what actually happened is that their social security numbers were stolen. They lost the security that they're entitled to have of their social security number. There is your harm. And if you look at the Webster case, which is a case out of the Sixth Circuit, the Webster case clearly said that the fact that you had your identity stolen, you have suffered a harm in and of itself regardless of what may or may not have happened after that identity was stolen. Is there a case law to establish that merely the loss of your social security number equates with a total identity theft? I would direct, Your Honor, to the Webster case, which I believe answers Your Honor's question. In that particular case, the Webster court was very strong in its language in saying that once you had your identity stolen, you have suffered a harm. No, no, no, that's not what I asked you. I asked you whether that case or any other case said that if your social security number was whatever, confiscated, misused, whatever, that that constitutes identity theft. I have not found any specific case saying that specific language that the court has just mentioned. But the facts in Webster's involve stolen social security numbers from children and the preparation of tax returns, right? Correct. Very similar to the facts here where, in our case, the defendant stole social security numbers, filed false income tax returns in order to profit from that. The Webster case was similar facts as the court pointed out. So your point is this is, that's the tangible harm, and that the proposition that your adversary is putting forth is really inaccurate, that it's not, that there might, I know you argued that there will be other filing things, and that that's part of this potential harm. But your real point, if I'm understanding you, is the fact that it was stolen is tangible harm, and that should satisfy, in and of itself, the vulnerable victim enhancement. Correct. And the district court actually said, in its ruling on the issue, that the children's social security number was proprietary, and the security of that number was denied to them because it was stolen from them. And the court did find that that is, in fact, tangible harm, and then went on to mention some of the intangibles which we've discussed in the brief, and the district court noted in its ruling. Go ahead. So then you're in favor of us establishing a standard of actual harm because you believe it's been met here. No, we don't believe that Chapter 3, the Chapter 3 enhancement, vulnerable victim enhancement, actually requires harm. You don't have to show actual harm like you would have to show in Chapter 2. It's possible that you are not a victim for Chapter 2 purposes, but you are a victim for Chapter 3 purposes under the vulnerable victim enhancement for a very important reason, which actually the Zaks case talks about, and that is we want to punish defendants who select their victims because of their vulnerability, which is exactly what happened in this case. And we want to give them an extra dosage of punishment and deterrence by awarding this enhancement to deter others from selecting victims because of their particular susceptibility. Now, that language appears and that reasoning appears in other cases, in the Kimber case out of the Second Circuit. I believe the Crispo case out of this circuit, I'm sorry, that was the Second Circuit case as well, where you had a threat to kidnap a three-year-old. The court affirmed the application of the enhancement there, even though the three-year-old didn't know about the threat at all. But there was a... The language in 3A in the enhancement talks about susceptibility, means you're susceptible to being taken advantage of. It doesn't mean you will be taken advantage of. Correct, and that's the reason why this crime was actually very successful, and if you read paragraph 43 of the pre-sense report, the defendant was successful to the tune of almost a million dollars. But I thought in Kimber the child or children were the intended victims, and the argument here is that the children were not the intended victims, right? Are you referring to the Kimber case? Yeah. Kimber case was the mercury in the hospital where the defendant brought in an amount of mercury that he wanted to put in the hospital to sicken employees and patients in the hospital. Now, ultimately it was not successful. Actually, no one was poisoned by the mercury. But the Second Circuit just last year was not troubled by that and agreed that the vulnerable victim enhancement applied in that particular case, even though there was no poisoning from the mercury. And in the Crispo case, also out of the Second Circuit back in 2002, the three-year-old victim who was threatened to be kidnapped by the defendant, there's no evidence that the victim was even aware, the vulnerable victim was even aware of the threat to kidnap the child. So in that particular case, the vulnerable victim enhancement also was applied, even though there was no actual harm shown as the appellant suggests should be read into that particular guideline section. So is it your view that we should adopt a rule that says actual harm is not required? The risk of harm is not required, but in this case we have a tangible harm in the form of the identity theft? In this case, the government believes it's easy because we have an actual harm, and we've shown that through testimony at the sentencing hearing. But the enhancement for vulnerable victim does not require harm precisely because the objective of the enhancement is to deter those and punish those who prey upon vulnerable victims. We don't care whether they're successful or not. We don't care whether they suffered a harm or not. As a matter of public policy, it is important enough to give an added measure of protection to vulnerable victims precisely because they're vulnerable. And if you look at the Zatz case, they actually went ahead, after using the hurt language and the injury language that you heard the appellant talk about, they actually went ahead and step by step went through the requirements for a vulnerable victim enhancement. And in discussing each of the requirements for a vulnerable victim enhancement, they did not hold and did not say that you had to prove actual harm before the vulnerable victim enhancement could be applied. Your adversary brought up Mr. Fisher's sentencing and the lack of enhancement of this sort to his sentence. Should we take anything from that? No. I believe the most that could be made of that is it's an oversight. And if you read the sentencing transcript, the district court actually adjusted the defendant's sentence to account for the fact that the co-defendant who cooperated against him at trial did not receive the enhancement. So Mr. Adeolu already received the benefit of that oversight. And I should mention the vulnerable victim enhancement would apply even in a situation where the victim is not even aware that they are victims. And certainly that's the Kennedy case. But it is also the case where, for example, if you had a sniper who took a shot at someone in NIST and that person didn't even know they were shot at, no one would say that you couldn't charge the sniper with attempted murder of that individual, even though they were not aware that they were shot at. But there's an intended victim, though. In that instance, there's a – I'm sorry. I'm sorry. There would be a victim. There would be a victim, correct. But the fact that the victims in this case, being the children, were not aware that a crime happened or that there were no consequences that flowed as Agent O'Brien testified would occur once they filed their taxes doesn't mean that they're not vulnerable victims. And that goes back to what, from your point of view, what the purpose of the enhancement is? Correct. The purpose of the enhancement, which the Zatz case actually talked about, and well, the Kimber case actually mentions that as well, as well as the Crispo case, and the Yount case, which is out of the 11th Circuit, talks about the importance of that particular enhancement and the purpose for having that enhancement to begin with. And it does not concern itself whether or not the defendant is ultimately successful in his criminal activities. The purpose of the enhancement is to give an extra dose of punishment to those who would target vulnerable victims, as happened in this case. In fact, the very reason this case turned out to be quite profitable for the defendant is because he knew that the children would be less likely to detect the use of their – the fraudulent use of their Social Security numbers. As a matter of fact, I was a trial attorney in this particular case. We introduced videotaped evidence, which is part of the record, where you can actually see the defendant preparing a fraudulent tax return for an undercover agent who had told him that I don't have a dependent, but here's one that I got for you. Let's go ahead and do this. Is there anything in the record that tells us where all the Social Security numbers came from? There is. There's testimony from Mr. Fisher, who testified that part of the operation of this particular tax office is they kept a ledger. It was actually a handwritten ledger, which we introduced in evidence at trial. And in this particular ledger, there was page after page after page of hundreds of names and Social Security numbers. My question is, what was the source of that? I'm aware of the ledger. What was the source of that? Did it come from other clients in his legitimate client business? Was there any evidence introduced at trial to tell us where those names and numbers came from? I'm aware of the ledger, though. As I recall the evidence, Judge Schwartz, those names and numbers came from other tax returns that they were able to prepare because they actually did prepare some legitimate tax returns, but they also engaged in preparing fraudulent tax returns as well. Thank you. Okay. Thank you very much. Thank you. So the thing I'd like to ask you about is the proposition that your adversary put forth, and that is that the harm here is the actual Social Security number having been stolen, and that there's no hypothetical harm here, that that's an actual tangible harm. Again, I think we briefly discussed this when I was up here before. I think that, again, is assuming an actual identity theft, which, again, that's not what this case is. These numbers were misused for purposes of filing fraudulent tax returns. But, again, there's no showing that the misuse of those numbers created any harm. An analogy I would try to say is if an underage individual steals or borrows someone's license to purchase alcohol or cigarettes, they've committed a fraud. They've used someone else's information for some type of personal gain. But that person didn't steal that person's identity. But he seemed to distinguish this case from identity theft in that there was a certain proprietary nature to the Social Security number so that it's taking in and of itself. He didn't say robbery, but, you know, when you think about sort of tangible harm and a piece of property that's akin to that, would you just say that that's not an analogy that'll work? No, no, Your Honor, I wouldn't, with all due respect. And I would point back to the Webster case that was just discussed. My understanding of that case involved adult theft of adult Social Security numbers. I could be wrong, but that's my recollection of the case. And in discussing the identity theft there as a harm, the court goes through a larger harm analysis and talks about, it mentions bank accounts again. It mentions credit cards. It goes through the process that an adult would have to go through to reestablish their identity. A child can have a bank account? A child can have a bank account, but that was not shown in this case and it was not discussed in this case. It was in the Webster opinion. I think the court, again, I would just advocate on behalf of following the circuits that do require an actual harm to be found prior to application of the enhancement and respectfully argue again that harm was not established in this case. I thank the court for its time. Yeah, thanks so much. We appreciate the excellent arguments and we shall take the matter under advisement.